# STATE OF CONNECTICUT *v.* SCOTT A. HALL
## (AC 27823)

DiPentima, Robinson and Borden, Js.

Argued February 21—officially released September 2, 2008

*Matthew D. Dyer*, assistant public defender, for the appellant (defendant).

*Eileen F. McCarthy*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Elizabeth M. Moseley*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Scott A. Hall, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1).[1] On appeal, the defendant claims that (1) as to his motion to suppress, the court

---

[1] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both . . . ."

improperly (a) limited his cross-examination of the state's sole witness and (b) denied the motion to suppress, and (2) the court improperly denied his motion for a judgment of acquittal. We affirm the judgment of the trial court.

On December 28, 2005, at approximately 9 p.m., Officer Lance Podlesney of the Bristol police department observed the defendant driving a vehicle without its headlights illuminated and stopped the vehicle. When he approached the vehicle on the passenger's side, he noticed a very strong odor of cologne, and he saw a bottle of cologne next to the defendant. Podlesney explained to the defendant why he had stopped him and asked him for his driver's license, registration and proof of insurance. While the defendant was looking for the documents, Podlesney asked him from where he was coming. The defendant replied that he was coming from a friend's house in Bristol. Podlesney then asked him if he had had anything to drink. The defendant hesitated, then said, "no." Podlesney asked him if he was sure; the defendant hesitated again and repeated, "no." During his discussion with the defendant, Podlesney noticed that the defendant's pupils were dilated. The defendant gave Podlesney the requested documents, and Podlesney returned to his vehicle to check if there were any outstanding warrants for the defendant and to check the validity of the registration; there were no warrants, and the registration was valid.

When Podlesney returned to the defendant's vehicle, he intentionally rephrased his previous question about whether the defendant had been drinking and asked the defendant how much he had had to drink. Podlesney testified that the defendant stated in response, "one beer, two beers, three beers and a shot." Podlesney also asked him again from where he was coming, and the defendant responded this time that he was coming from his brother's house in Plainville. At this time, two

officers arrived to provide backup to Podlesney, and he asked the defendant to step out of the vehicle. When asked if he would consent to taking the field sobriety tests, the defendant assented. As the defendant exited the vehicle, Podlesney smelled alcohol on the defendant's breath.

Podlesney conducted three field sobriety tests: the horizontal gaze nystagmus,[2] the walk and turn test, and the one leg stand test. Podlesney determined that the defendant had failed all three tests. Podlesney arrested the defendant and brought him to the police station where he advised the defendant of his constitutional rights. Podlesney asked the defendant to take a Breathalyzer test and explained the consequences of both taking and not taking the test. The defendant refused to submit to the test.

The defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of § 14-227a (a) (1). On April 11, 2006, the day before jury selection began, the defendant filed a motion to suppress the arrest. After a hearing,

[2] "Nystagmus is the inability of the eyes to maintain visual fixation on a stimulus when the eyes are turned to the side, often resulting in a lateral jerking of the eyeball. . . . The premise of the horizontal gaze nystagmus test is that as alcohol consumption increases, the closer to the midline of the nose the onset of nystagmus occurs. To administer the test, the officer positions a stimulus approximately twelve to eighteen inches away from and slightly above the subject's eyes. The stimulus, usually a pen or the officer's finger, is then moved slowly from the midline of the nose to maximum deviation, the farthest lateral point to which the eyes can move to either side. The officer observes the subject's eyes as [the subject tracks the stimulus. The officer] looks for six clues, three for each eye, to determine whether the subject passes or fails the test. The officer looks for (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) the onset of nystagmus at an angle less than forty-five degrees in relation to the center point. A finding of four clues indicates failure of the test and is a sign of intoxication." (Internal quotation marks omitted.) *State* v. *Balbi*, 89 Conn. App. 567, 570–71, 874 A.2d 288, cert. denied, 275 Conn. 919, 883 A.2d 1246 (2005).

the court denied the motion on April 18, 2006, and the trial proceeded. On April 19, 2006, the jury found the defendant guilty, and, thereafter, the state filed a part B information, alleging that the defendant had been convicted of operating a motor vehicle in violation of § 14-227a on two prior dates and, therefore, was subject to enhanced penalties under § 14-227a (g). The court found the defendant guilty as a third time offender and subject to the enhanced penalties. The defendant was sentenced to three years incarceration, execution suspended after one year, and two years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first argues that the court improperly (1) restricted his cross-examination of Podlesney and (2) denied the motion to suppress. The defendant specifically argues that the court precluded a full and fair cross-examination of the state's sole witness at the suppression hearing, thereby depriving him of due process and fundamental fairness. He then argues that even if his first claim fails, his statements as to his alcohol consumption and the results of the field sobriety tests should have been suppressed for lack of a showing of a reasonable, articulable suspicion on the part of the police to continue the investigation. We disagree with both claims.

The following additional facts and procedural history are pertinent to the resolution of the defendant's claim. In his April 11, 2006 motion, citing provisions of the Connecticut and United States constitutions, as well as *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and *State* v. *Oquendo*, 223 Conn. 635, 613 A.2d 1300 (1992), the defendant sought to suppress his arrest, "as there was no probable cause to justify [the]

arrest."[3] During the April 18, 2006 suppression hearing, the state questioned Podlesney about his training as a police officer and the events that had transpired on December 28, 2005. Podlesney described what had happened to the point at which he returned to the defendant's vehicle from his police vehicle and began to question the defendant again. The court then interrupted the prosecutor, suggesting that on the basis of the scope of the motion, the state need go no further in its questioning, and the state agreed.[4]

Following this colloquy, defense counsel began to cross-examine the witness without commenting on the court's and the prosecutor's interpretation of the scope of the motion. Defense counsel questioned Podlesney about his training and the lighting conditions where Podlesney had stopped the defendant. Defense counsel also asked him about his questioning of the defendant on his return to the defendant's vehicle, including the inconsistent statements made by the defendant about whether he had been drinking and where he had been. Defense counsel then returned to questioning Podlesney about his training and the equipment in his vehicle.

---

[3] On appeal, the defendant claims that at the suppression hearing, he "specifically sought to suppress the results of the field sobriety tests and any statements made *after* the [officer's] first contact [with the defendant] that were made without the benefit of the warnings established by *Miranda* v. *Arizona*, 384 U.S. 436 [86 S. Ct. 1602, 16 L. Ed. 2d 694] (1966), including but not limited to any statements made regarding the defendant's alcohol consumption." (Emphasis in original.)

[4] At that time, the following colloquy took place:

"The Court: [Counsel], based on the scope of the motion to suppress being *Terry*, *Oquendo*, I'm not sure you need to go much further into what happened at that point in time.

"[The Prosecutor]: That's correct, Your Honor. And in fact, I was going to stop at this point. I believe that the motion really has to do with reasonable and articulable suspicion in order to stop the defendant.

"The Court: [Counsel].

"[Defense Counsel]: I would just like to be sure that [the prosecutor] has completed where she was going.

"The Court: I'm satisfied.

"[Defense Counsel]: Okay."

Shortly after the return to the issue of training, the court interrupted the cross-examination, again suggesting that the questioning was moving beyond the scope of the motion. The following colloquy took place:

"The Court: [Counsel], I think we're getting beyond the scope of the motion. Quite frankly, there are things that could be handled at the trial.

"[Defense Counsel]: If I could be heard on that briefly. I am just trying to get to the basis of his training and investigation. Again, given that he is a relatively young police officer on the force, I'm just trying to get to what exactly his training was.

"The Court: But you don't have to convince me what *Terry* stood for, and what *Oquendo* stood for. I am very familiar with both of these cases.

"[Defense Counsel]: I understand that, but I do have to establish a factual basis, Judge. I'm just trying to make sure that we have the training out there. I'll move on.

"The Court: I'm not sure how much further I'm going to let you move on.

"[Defense Counsel]: Your Honor, with all due respect, the credibility of the officer here is absolutely in at a suppression hearing. And if I have facts that are being raised—

"The Court: I am not going to argue with you, [counsel]. Quoting *Terry* and *Oquendo*, it's a stop. The other matters can come in if the stop passes the test, and that would come in at the time of the trial, not at a motion to suppress. I am denying the motion to suppress. We will stand in recess until the next matter is ready.

"[Defense Counsel]: Your Honor, just for the record, I would like you to know my objection to that.

"The Court: You certainly may."

After a recess, defense counsel requested an articulation of the court's denial of the motion to suppress. The court responded: "Obviously, I have the time where I can reduce it to writing, but as I said, maybe not in the most diplomatic way. Unless I'm wrong and a higher court tells me I am wrong, I think to really satisfy both elements of a *Terry* stop and an *Oquendo* stop, it has to be something a little foggy. And I think by virtue of the police officer observing the vehicle without its lights on after dark, [that] took that argument away. Whatever happened after that are matters that are for the jury to explore. But I think from the standpoint of a motion to suppress, and then what happens after the stop is made, was satisfied by the fact that according to the police officer, the lights were not on the vehicle that night, and any police officer would respond if they had the time when they saw that."

Defense counsel then stated, "And for the record, the defense argument was at a point beyond that initial stop, partly exceeding the scope." The colloquy continued:

"The Court: Right. I know where we were going. But I thought that was probably more of a fact for the jury to hear than the motion. But, like I said, you want to at the point in time—

"[Defense Counsel]: As long as the record's clear, that's all. Thank you. Other than that, I think that the defense is prepared to go forward."

In a memorandum of decision regarding the motion to suppress filed June 1, 2006, the court further explained its denial, including the following language: "Officer Podlesney clearly had the right to stop the defendant and, in fact, would be derelict of his sworn duties if he or any other police officer allowed a driver to operate a vehicle without the vehicle's headlights

being on after dark. Following a valid stop, any observations made by a police officer, even those resulting in an arrest, are constitutionally permissible."

"Our standard of review of a claim that the court improperly limited the cross-examination of a witness is one of abuse of discretion. . . . [I]n . . . matters pertaining to control over cross-examination, a considerable latitude of discretion is allowed. . . . The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination of a witness, generally rests within the sound discretion of the trial court. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . .

"The court's discretion, however, comes into play only after the defendant has been permitted cross-examination sufficient to satisfy the sixth amendment [to the United States constitution]. . . . The sixth amendment . . . guarantees the right of an accused in a criminal prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . . As an appropriate and potentially vital function of cross-examination, exposure of a witness' motive, interest, bias or prejudice may not be unduly restricted. . . . Compliance with the constitutionally guaranteed right to cross-examination requires that the defendant be allowed to present the [fact finder] with facts from which it could appropriately draw inferences relating to the witness' reliability. . . . [P]reclusion of sufficient inquiry into a particular matter tending to show motive, bias and interest may result in a violation of the constitutional requirements of the sixth amendment. . . . In determining whether such a violation occurred, [w]e consider the nature of the excluded inquiry, whether the field of inquiry was adequately

covered by other questions that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial. . . .

"As to the defendant's right to present a defense, [t]he sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . [T]he constitution does not require that a defendant be permitted to present every piece of evidence he wishes. . . . If the proffered evidence is not relevant, the defendant's right to confrontation is not affected, and the evidence was properly excluded." (Citations omitted; internal quotation marks omitted.) *State* v. *Andrews*, 102 Conn. App. 819, 825–27, 927 A.2d 358, cert. denied, 284 Conn. 911, 931 A.2d 932 (2007).

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Stephenson*, 99 Conn. App. 591, 595–96, 915 A.2d 327, cert. denied, 282 Conn. 903, 919 A.2d 1037 (2007).

As an initial matter, we address the state's argument that the defendant's claims are not reviewable because the scope of the motion to suppress, as pleaded and presented to the court, was limited to the initial stop by Podlesney and did not challenge the roadside testing and questioning regarding alcohol consumption. We

agree that the defendant's motion was not drafted artfully, that defense counsel did not alert the court to the scope of his motion in a prompt manner and that the court's ruling focused primarily on the initial stop. It was after the court's oral ruling that defense counsel finally stated that "the defense argument was at a point beyond that initial stop, partly exceeding the scope." At that point, the court clearly was alerted to the fact that the scope of the motion went beyond Podlesney's initial stop of the defendant. Furthermore, in its subsequent written memorandum, the court addressed, however briefly, the events following the stop. For these reasons, we disagree with the state's argument that the defendant's claims were unpreserved, and, accordingly, we review the defendant's claims.

A

The defendant argues that because the court foreclosed his cross-examination of Podlesney, the suppression hearing did not comport with fundamental fairness and due process. We conclude that the court improperly determined that the events following the initial stop were not the proper subject of such a motion because of its incorrect belief that the scope of the search would be a question for the jury. Cf. *State* v. *Januszewski,* 182 Conn. 142, 149–51, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Nevertheless, the court's decision to end the cross-examination was not an abuse of discretion.

The record reveals that when the court terminated the cross-examination of Podlesney, defense counsel sought to continue questioning the officer again about his training and his credibility with respect to the training, and defense counsel made no proffer of other evidence he wanted to adduce during cross-examination. The issue at the suppression hearing as to whether Podlesney had a reasonable, articulable suspicion to

continue his investigation after the initial stop required an objective standard, not a subjective standard dependent on the training of the officer. Thus, although the scope of the search was relevant to the motion to suppress, the officer's training was not. See *State* v. *Batts*, 281 Conn. 682, 691–92, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007). Furthermore, at trial before the jury, defense counsel had the opportunity to cross-examine Podlesney fully, and our review of that cross-examination persuades us that there was nothing in it that could have affected the validity of the court's ultimate ruling on the motion to suppress. See *State* v. *Shifflett*, 199 Conn. 718, 729, 508 A.2d 748 (1986) ("[o]n appeal, in order to determine whether the defendant's constitutional rights have been infringed, we review the record in its entirety and are not limited to the evidence before the trial court at the time the ruling . . . was made" [internal quotation marks omitted]).

Although the court based its ruling on a ground other than relevance, we determine that further testimony on the officer's training was not relevant. See *State* v. *Colon*, 272 Conn. 106, 187–88, 864 A.2d 666 (2004) ("[W]hen the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it. . . . We may affirm the court's judgment on a dispositive alternate ground for which there is support in the trial court record." [Citation omitted; internal quotation marks omitted.]), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). Because the proffered evidence was not relevant, the defendant's right to confrontation was not affected, and the evidence was excluded properly. See *State* v. *Andrews*, supra, 102 Conn. App. 825–27. Thus, the court's termination of the cross-examination was not an abuse of discretion.

## B

The defendant next argues that the court improperly denied his motion to suppress because the state had failed to show that there was a reasonable, articulable suspicion to expand the scope of the initial stop to conduct field sobriety tests and further questioning. We disagree. "[R]oadside sobriety tests that do not involve long delay or unreasonable intrusion, although searches under the fourth amendment, may be justified by an officer's reasonable suspicion (based on specific, articulable facts) that the driver is intoxicated." (Internal quotation marks omitted.) *State* v. *Lamme*, 19 Conn. App. 594, 600, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990) (addressing novel state constitutional claim). "[W]e have noted that our case law presumes that such testing is incident to the initial stop, based on the officer's reasonable suspicion, rather than on the subsequent arrest. . . . We have concluded that such roadside testing and questioning based on a reasonable, articulable suspicion in the absence of probable cause is clearly warranted within the meaning of the Connecticut constitution." (Citation omitted; internal quotation marks omitted.) *State* v. *Gracia*, 51 Conn. App. 4, 17–18, 719 A.2d 1196 (1998).

Here, Podlesney testified that after stopping the defendant's vehicle for its lack of illuminated headlights, he approached the vehicle on the passenger side and noticed an overwhelming smell of cologne and observed a bottle of it next to the driver. He also testified that the defendant had hesitated in answering questions and that his pupils had been dilated. These specific facts gave rise to a reasonable, articulable suspicion for conducting the field sobriety tests and further questioning. On the basis of this testimony and our review of the entire record, we conclude that the court's denial of the motion to suppress was legally and logically correct.

## II

The defendant's second claim is that the court improperly denied his motion for a judgment of acquittal. We disagree.

"The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. . . . The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable inferences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt. . . . The facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sustaining the jury's verdict." (Internal quotation marks omitted.) *State* v. *Hines*, 89 Conn. App. 440, 446, 873 A.2d 1042, cert. denied, 275 Conn. 904, 882 A.2d 678 (2005).

The defendant argues that the state did not present sufficient evidence as to the scientific validity of the standardized field sobriety tests as required under *State* v. *Merritt*, 36 Conn. App. 76, 91, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995). *Merritt* requires that because "horizontal gaze nystagmus evidence is the type of scientific evidence that may mislead a jury in the absence of a proper foundation . . . [a] three part test . . . must be satisfied before such evidence is admissible. [The] test requires that the state (1) satisfy the criteria for admission of scientific evidence, (2) lay a proper foundation with regard to the qualifications of the individual administering the test and (3) demonstrate that the test was conducted in accordance with relevant procedures." (Citation omitted.) *State* v. *Balbi*, 89 Conn. App. 567, 573–74, 874 A.2d 288, cert. denied, 275 Conn. 919, 883 A.2d 1246 (2005). The defendant acknowledges that the state is no longer required to adduce evidence to satisfy the

first prong for the horizontal gaze nystagmus test; see *State* v. *Commins*, 83 Conn. App. 496, 503–505, 850 A.2d 1074 (2004), aff'd, 276 Conn. 503, 886 A.2d 824 (2005); see also *State* v. *Balbi*, supra, 576–77 (concluding that determination in *Commins* that horizontal gaze nystagmus evidence satisfied requirements of *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), and, thus, state not required to reestablish proposition in each case); but contends that the state produced insufficient evidence to satisfy the two remaining prongs.

The defendant argues that because neither Podlesney nor Detective Garrie Dorman, one of the officers who had served as backup to Podlesney during his field testing of the defendant, produced any training manuals when they testified, the jury did not have a basis on which to determine whether the administration of the tests was adequate and whether the tests were performed within generally accepted standards. For support of this proposition, the defendant relies on language from *State* v. *Balbi*, supra, 89 Conn. App. 567, discussing the application of the *Merritt* test to administration of the horizontal gaze nystagmus test: "The state . . . must lay a proper foundation with regard to the qualifications of the individual administering the test and demonstrate that the test was conducted in accordance with generally accepted standards *such as* those specified in the relevant sections of the National Highway Traffic Safety Administration's manual." (Emphasis added.) Id., 577. The *Merritt* test, however, does not require that evidence of the criteria in the National Highway Traffic Safety Administration's manual for the horizontal gaze nystagmus test be adduced, only evidence that the test was conducted in accordance with generally accepted standards.

At trial, the jury heard evidence regarding Podlesney's training as a police officer and, specifically, his training in administering the field sobriety tests, about

which defense counsel cross-examined him. Dorman also testified about the training police officers receive regarding drivers under the influence of alcohol or drugs. Both Podlesney and Dorman described the three field sobriety tests that Podlesney conducted. In addition, Dorman, a more experienced officer than Podlesney, having made more than fifty driving under the influence arrests himself and having served as a backup officer in hundreds of others, testified that he had observed Podlesney administer the field sobriety tests and that Podlesney had administered them properly. After observing the defendant perform the test, Dorman testified that he also concluded that the defendant had failed the horizontal gaze nystagmus test.[5] On the basis of Dorman's experience, his descriptions of the field sobriety tests in comparison to Podlesney's descriptions of the tests and his conclusion that Podlesney had administered the tests properly, the jury had evidence that the test was conducted in accordance with generally accepted standards. Thus, the two remaining prongs of the *Merritt* test were satisfied.

To prove its case, the state was required to prove that the defendant (1) had been operating a motor vehicle and (2) that he was under the influence of intoxicating liquor or drugs while operating the vehicle. General Statutes § 14-227a (a) (1). The jury heard the following evidence: The defendant had been driving with his lights off, which, according to Podlesney's testimony, can be a sign of an intoxicated driver; Podlesney observed that the defendant's pupils were dilated; the defendant admitted to having one or more beers and a shot; the defendant gave conflicting accounts of where he had been prior to being stopped; the defendant failed all three field sobriety tests; and the defendant refused to submit to the Breathalyzer test. On the basis of these

[5] Dorman also observed Podlesney administer the other two field sobriety tests and independently concluded that the defendant had failed those tests as well.

facts and the reasonable inferences to be drawn there-from, the jury reasonably could have found that the state had met its burden of proving the defendant's guilt beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.