STATE OF CONNECTICUT *v.* KEITH D. SWARD
(AC 31320)

DiPentima, C. J., and Lavine and Hennessy, Js.

Argued September 3—officially released October 19, 2010

*Gregory A. Thompson,* for the appellant (defendant).

*Emily Graner Sexton,* special deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Ronald Dearstyne,* senior assistant state's attorney, for the appellee (state).

LAVINE, J. The sole issue in this appeal is whether the trial court properly denied the defendant's motion to suppress evidence obtained after his initial encounter with a state police trooper during a routine traffic stop. The defendant, Keith D. Sward, appeals from the trial court's judgment of conviction, rendered following a conditional plea of nolo contendere, of illegal operation of a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a.[1] On appeal, the defendant claims that the court improperly denied his motion to suppress because, after his initial encounter with the state trooper, the traffic stop was unlawfully expanded in violation of *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. On April 13, 2007, at approximately 1:21 a.m., Trooper Kenneth Freed was patrolling the New Britain area when he observed the defendant's vehicle accelerating at a high rate of speed as it entered Route 72 westbound. Freed performed a vehicle clock check and followed the defendant for approximately one and one-half miles. While performing this check, Freed estimated the defendant's speed at approximately 100 miles per hour in a fifty-five mile per hour zone.

After observing the defendant's vehicle touch the right fog line of the highway, Freed activated his vehicle's emergency lights and siren to effect a traffic stop.

---

[1] The defendant also was charged with reckless driving in violation of General Statutes § 14-222 and the infraction of making an improper turn in violation of General Statutes § 14-242. The state nolled those charges when the defendant entered his conditional plea of nolo contendere to the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs.

The defendant moved his vehicle from the left lane of the highway to the right lane without using the turn signal and, as he exited the highway, stopped on the left side of the ramp. Freed instructed the defendant to move his vehicle to the right side of the ramp, which he did.

For safety reasons, and because the defendant's vehicle was partially parked in the right travel lane, Freed approached the defendant's car from the passenger's side. The defendant acknowledged that he knew he had been stopped because he was driving seventy to seventy-five miles per hour, and, upon Freed's request, produced his license, insurance documents and the vehicle's registration. After seeing the defendant fumble through the contents of his glove box, Freed asked the defendant if he had been drinking. The defendant responded that he had not.

Freed took the defendant's license, registration and insurance information back to his cruiser to check their validity and found that the defendant had a valid license, proper insurance and that his vehicle was not reported stolen. After five to ten minutes, he returned to the defendant's vehicle, but this time he approached from the driver's side. At this point, Freed had not determined whether he would issue the defendant a summons for reckless driving or whether he would place the defendant under custodial arrest. In order to interact with him personally, Freed asked the defendant to step out of his vehicle and walk to the front of the cruiser. Freed proceeded to pat down the defendant for weapons once he exited the vehicle.

Standing within one or two feet of the defendant, Freed detected an odor of alcohol on the defendant's breath. The defendant admitted to consuming two alcoholic beverages despite initially stating that he had not been drinking that night. Freed also observed that the

defendant's eyes were red, bloodshot and glassy, and he then had the defendant perform field sobriety tests.

The defendant was arrested and charged with illegal operation of a motor vehicle while under the influence of alcohol or drugs, reckless driving and making an improper turn. On June 2, 2008, the defendant filed an amended motion to suppress all evidence obtained after the conclusion of the initial encounter with Freed, claiming that the scope of the traffic stop was unlawfully expanded after Freed returned to the defendant's vehicle and that there was no reasonable and articulable suspicion of intoxication to permit the expansion. An evidentiary hearing was held on October 22, 2008, in which the court heard the testimony of Freed and received into evidence a copy of a videotape of the traffic stop in question. The trial court denied the motion to suppress on March 31, 2009, stating in its subsequent articulation that when Freed returned to the defendant's car, the initial purpose of the stop had not been fully achieved and, therefore, the scope of the stop had not been unlawfully expanded. On July 30, 2009, the defendant entered a conditional plea of nolo contendere to the charge of illegal operation of a motor vehicle while under the influence of intoxicating liquor or drugs, with a right to appeal pursuant to General Statutes § 54-94a. This appeal followed.

"As a general matter, the standard of review for a motion to suppress is well settled. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Mullins*, 288 Conn. 345, 362–63, 952 A.2d 784 (2008).

Our Supreme Court recently addressed the proper analysis for considering the constitutionality of the detention of a motorist during a routine traffic stop in *State* v. *Jenkins*, 298 Conn. 209, 3 A.3d 806 (2010). In *Jenkins*, the defendant motorist was stopped by a police officer at 11:15 p.m. for making abrupt lane changes without using his vehicle's turn signals. Id., 214. The officer approached the defendant's vehicle, asked some questions concerning the stop and the defendant's travel plans, and then went back to his cruiser to check the defendant's personal and vehicular information. Id., 214–15. This check revealed no outstanding warrants pertaining to the defendant. Id., 215. The officer then began to write an infraction ticket for the illegal lane changes. Id. The officer returned to the defendant's vehicle and asked the defendant to get out of the car for the purposes of explaining the ticket. Id. Due to the defendant's nervous demeanor and account of his travels,[2] the officer asked him if he had anything illegal on his person or in his vehicle. Id., 215–16. The defendant was patted down, which revealed no contraband, and then he voluntarily permitted the officer to search his car. Id., 216. The officer found what he believed to be cocaine in the defendant's car and placed the defendant under arrest. Id. From the time that the officer initiated the stop, until the defendant consented to the search of his vehicle, only ten to fifteen minutes had passed. Id., 216–17. In all, the entire stop lasted at most twenty minutes. Id., 217.

Following the denial of his motion to suppress the evidence seized from his vehicle, the defendant pleaded nolo contendere to one count of possession of narcotics

---

[2] When the officer questioned the defendant about his travel itinerary, the defendant told the officer that he was returning from visiting his daughter in New York, and gave the officer a New Jersey license and a valid Pennsylvania rental agreement for his vehicle. *State* v. *Jenkins*, supra, 298 Conn. 215. The officer testified that the defendant appeared " 'unusually nervous,' " gave " 'quick answers' " to his questions and did not make eye contact. Id.

with intent to sell by a person who is not drug-dependent. Id., 218. On appeal, this court, in addressing the defendant's claim that all evidence seized from his vehicle was the fruit of an unlawfully extended traffic stop, held that the trial court should have suppressed the evidence taken from the defendant's vehicle because he "was unlawfully detained . . . his consent to search the vehicle was tainted by that illegal detention and . . . the state failed to purge the taint of the illegal detention." *State* v. *Jenkins*, 104 Conn. App. 417, 424, 934 A.2d 281 (2007), rev'd, 298 Conn. 209, 3 A.3d 806 (2010). In reaching this decision, this court relied on case law that predated *Muehler* v. *Mena*, 544 U.S. 93, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005). *State* v. *Jenkins*, supra, 298 Conn. 243. Our Supreme Court reversed this court's decision, holding that, under controlling federal law as decided by *Muehler* and its progeny, the officer did not measurably or unreasonably prolong his traffic stop of the defendant. Id., 246. In reaching this conclusion, the court laid out the applicable constitutional analysis for the present appeal.[3] Id.

"Courts considering the constitutionality under the fourth amendment of a police officer's interaction with a motorist during a routine traffic stop apply the principles developed under the line of case law implementing the central holding of *Terry* v. *Ohio*, supra, 392 U.S. 1. . . . Under *Terry*, where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity

---

[3] In his brief, the defendant relies heavily on this court's decision in *Jenkins*. The defendant's brief was filed on March 11, 2010, and our Supreme Court's decision in *Jenkins* was officially released on September 7, 2010, and available on the judicial branch website on August 31, 2010, just prior to oral arguments, which occurred on September 3, 2010. *Muehler*, however, was decided prior to the submission of briefs. While counsel for the defendant conceded during oral argument that this court's decision in *Jenkins* no longer supported his position, he still contended that the facts articulated by the trial court to justify Freed's right to detain the defendant were not sufficient at the moment of the initial encounter to expand the stop.

may be afoot . . . the officer may briefly stop the sus-
picious person and make reasonable inquiries aimed
at confirming or dispelling his suspicions." (Citations
omitted; internal quotation marks omitted.) *State* v. *Jenkins*, supra, 298 Conn. 232–33.

Although a police officer cannot detain a motorist
indefinitely, "the Supreme Court has rejected attempts
to impose a hard-and-fast time limit on *Terry* stops, in
favor of a reasonableness inquiry where, [i]n assessing
whether a detention is too long in duration to be justi-
fied as an investigative stop, we consider it appropriate
to examine whether the police diligently pursued a
means of investigation that was likely to confirm or
dispel their suspicions quickly, during which time it
was necessary to detain the defendant. . . . A court
making this assessment should take care to consider
whether the police are acting in a swiftly developing
situation, and in such cases the court should not indulge
in unrealistic second-guessing." (Internal quotation
marks omitted.) Id., 235. Therefore, "judicial review of
routine traffic stops goes beyond a strict stopwatch test;
reasonableness is not measured solely by the temporal
duration of the stop alone but, rather, requires scrupu-
lous consideration of the reasonableness of the officers'
actions during the time of the stop." Id., 242.

Moreover, "[a] lawful roadside stop begins when a
vehicle is pulled over for investigation of a traffic viola-
tion. The temporary seizure of driver and passengers
ordinarily continues, and remains reasonable, for the
duration of the stop. Normally, the stop ends when the
police have no further need to control the scene, and
inform the driver and passengers they are free to leave.
. . . An officer's inquiries into matters unrelated to the
justification for the traffic stop, [the United States
Supreme Court] has made plain, do not convert the
encounter into something other than a lawful seizure,
*so long as those inquiries do not measurably extend*

*the duration of the stop.*" (Emphasis in original; internal quotation marks omitted.) Id., 235–36.

Applying the applicable law, as articulated in *Muehler* and followed by our Supreme Court in *Jenkins* and elsewhere, we conclude that Freed did not unlawfully extend the traffic stop. While the defendant concedes that the initial stop of his vehicle was legal, he argues that the stop became unlawful when Freed asked him to exit the vehicle. According to the defendant, there was no reasonable suspicion based on specific facts to take any action at that point other than ticketing or arresting the defendant for reckless driving. For the following reasons, we reject this argument.

We first note that, as stated in *State* v. *Jenkins*, supra, 298 Conn. 246, and our prior case law, it is proper for a police officer to ask a driver to exit his vehicle during a routine traffic stop. "A police officer has the right to stop a motor vehicle operating on a Connecticut highway even if the reason for the stop is only an infraction under our traffic laws. Upon doing so, he prudently may prefer to ask that an occupant exit the vehicle; any intrusion upon an occupant's personal liberty in directing that action is de minimis because, on balance, it serves to protect the officer." (Internal quotation marks omitted.) *State* v. *Dukes*, 209 Conn. 98, 122, 547 A.2d 10 (1988). In the present case, when Freed asked the defendant to exit his vehicle, the defendant's car was parked on a highway exit, and part of the car was protruding into the right travel lane. Any burden on the defendant's personal liberty in exiting the car was certainly de minimis given the danger Freed faced by standing in the travel lane of a highway exit ramp at night. See id.

Next, the entire traffic stop effected by Freed meets the reasonableness inquiry articulated in *Jenkins*. Although the record does not indicate the total length

of time of the traffic stop, the court found that when Freed went back to his cruiser to check the defendant's identification and insurance documents, he was gone only five to ten minutes. Furthermore, counsel for the defendant stated during oral argument that the entire incident lasted "probably twenty-five minutes." Even if the stop did take twenty-five minutes in its entirety, as argued by the defendant, we believe this amount of time is not unreasonable under the circumstances of this case.

While temporal duration alone is not dispositive of the constitutionality of a traffic stop, Freed's actions during the period in question, such as checking the defendant's license, insurance and registration, and questioning the defendant about the consumption of any alcoholic beverages, were all reasonable as they related to the traffic stop itself. Although Freed asked the defendant a second time if he had been drinking that night, this second inquiry concerning the consumption of alcohol did not measurably extend the duration of the stop.

Finally, although not addressed in *Jenkins*, our case law indicates that it was permissible for Freed to have the defendant perform field sobriety tests in this situation. "[R]oadside sobriety tests that do not involve long delay or unreasonable intrusion, although searches under the fourth amendment, may be justified by an officer's reasonable suspicion (based on specific, articulable facts) that the driver is intoxicated. . . . [W]e have noted that our case law presumes that such testing is incident to the initial stop, based on the officer's reasonable suspicion, rather than on the subsequent arrest. . . . We have concluded that such roadside testing and questioning based on a reasonable, articulable suspicion in the absence of probable cause is clearly warranted within the meaning of the Connecticut constitution." (Citation omitted; internal quotation marks

omitted.) *State* v. *Hall*, 110 Conn. App. 41, 53, 954 A.2d 213 (2008).

At the point Freed had the defendant perform the sobriety tests, Freed had detected an odor of alcohol emanating from the defendant, the defendant had been driving in excess of 100 miles per hour and his vehicle had touched the fog line, the defendant had changed his answer and admitted to consuming alcohol that evening, and Freed had observed the defendant drive to the left side of the ramp rather than to the right side.[4] These observations all gave rise to a reasonable, articulable suspicion that the defendant was intoxicated.

Accordingly, we conclude that Freed did not unlawfully extend the duration of the traffic stop by requesting that the defendant exit his vehicle or by questioning the defendant further about whether he had consumed any alcohol that night. Additionally, we find that Freed was justified in having the defendant perform field sobriety tests. Therefore, the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Although both the state and the court also relied on Freed's observation that the defendant fumbled to locate the vehicle's registration and insurance documents as evidence of intoxication, we note that a traffic stop is a stressful situation, and it is likely that some drivers will find it difficult to locate certain documents within their vehicle under this pressure.