STATE OF CONNECTICUT *v.* DANIEL MORELLI
(AC 27022)

Schaller, McLachlan and Gruendel, Js.

Argued May 21—officially released August 14, 2007

*Roy S. Ward*, for the appellant (defendant).

*Harry D. Weller*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Tiffany M. Lockshier*, assistant state's attorney, for the appellee (state).

### Opinion

McLACHLAN, J. This drunk driving case raises concerns about the administration of standardized field sobriety tests on a person who has just suffered head trauma as a result of a car accident. The defendant, Daniel Morelli, appeals from the judgment of conviction, following a trial to the court, of operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes (Rev. to 2003) § 14-227a.[1] The defendant claims that the court improperly determined that there was sufficient competent evidence to support his conviction. We reverse the judgment of the trial court.

The court reasonably could have found the following facts. On the evening of January 21, 2004, at approximately 6 p.m., the defendant was involved in a motor vehicle accident at the intersection of Weston Road and Lyon Plain Road in Westport. The accident occurred

---

[1] The defendant received a total effective sentence of six months incarceration, execution suspended, eighteen months probation with added conditions and a $1000 fine plus court costs. The defendant was found not guilty of interfering with an officer in violation of General Statutes § 53a-167a.

when the pickup truck the defendant was driving northbound on Weston Road struck a car that was turning left onto Lyon Plain Road from the southbound side of Weston Road. Charise Abrams, the driver of the car that was struck, testified that she had been at the intersection waiting behind another car to make a left turn. When the car in front of her turned, she observed the traffic light turn yellow. Believing that she had enough time to turn before the light changed to red, Abrams initiated the turn and the defendant's vehicle struck the front of her car. Abrams testified that the defendant had accelerated rapidly as she initiated the turn. After reviewing what had occurred, the Westport police determined that Abrams and not the defendant was at fault for the accident and issued her a traffic citation for making an improper turn.[2]

The first police officer to arrive on the scene was Westport police Officer George Taylor, who made contact with the defendant and observed that he was bleeding from the nose and mouth.[3] Taylor offered the defendant medical attention, but the defendant declined and requested that the officer check on the occupants of the other car. During his brief interaction with the defendant, Taylor, who had received training as a police officer in detecting drivers under the influence of alcohol, did not observe any indications that the defendant may have been impaired, such as an odor of alcohol, slurred speech or bloodshot eyes.

The second officer to arrive on the scene, T. Arnette,[4] also made contact with the defendant. Arnette testified that during a conversation with the defendant, he detected a constant odor of alcohol coming from the defendant's person and noticed that the defendant was

---

[2] The citation ultimately was dismissed.

[3] It was later determined that the defendant suffered head trauma and an acute nasal fracture.

[4] The full name of Arnette is not apparent from the record.

having difficulty standing.[5] Arnette also noted that the defendant had an obvious facial injury and that his nose was actively bleeding, ostensibly as a result of the collision. Arnette's observations of the defendant were consistent with the testimony of a third officer, Ryan Paulsson, who arrived on the scene and made contact with the defendant shortly thereafter.

At the scene, the defendant admitted to Arnette that he had been drinking, but claimed not to be intoxicated. Emergency medical personnel arrived and brought the defendant to the back of an ambulance and offered medical assistance, which he declined. Arnette then requested that the defendant perform standardized field sobriety tests, to which the defendant agreed. Arnette testified that, consistent with his police training, he administered three standardized field sobriety tests, the horizontal gaze nystagmus[6] test, the walk and turn test and the one leg stand test, while Paulsson observed. These standardized tests were promulgated by the National Highway Traffic Safety Administration to assist law enforcement in determining whether the operator of a motor vehicle is under the influence of alcohol.

According to the testimony of both Arnette and Paulsson, the defendant failed each of the three tests. Specifically, with respect to the horizontal gaze nystagmus test, Arnette testified that he is trained to look for six clues indicative of impairment and that, as he administered the test to the defendant, he observed that the

[5] Arnette indicated initially that the defendant's eyes were glassy and red, but on cross-examination, he admitted that he had made no such indications in his report and that therefore it would be fair to assume that the defendant's eyes were neither glassy nor red.

[6] "Nystagmus is the inability of the eyes to maintain visual fixation on a stimulus when the eyes are turned to the side, often resulting in a lateral jerking of the eyeball." (Internal quotation marks omitted.) State v. Balbi, 89 Conn. App. 567, 570–71, 874 A.2d 288, cert. denied, 275 Conn. 919, 883 A.2d 1246 (2005).

defendant exhibited all six clues. With respect to the walk and turn test, both officers testified that they observed the defendant exhibiting seven out of a possible eight clues.[7] With respect to the one leg stand test, Paulsson testified that he observed that the defendant exhibited three out of a possible four clues and Arnette testified that he observed all four.

During this process, the officers testified that the defendant was annoyed, argumentative and used profanity. Upon conclusion of the field sobriety tests, Arnette informed the defendant that he was under arrest, and the defendant became aggressive, refusing to comply with the officers' requests that he put his hands behind his back. With the assistance of Paulsson, Arnette eventually was able to get the defendant to comply, and the defendant was brought to the police station for booking.

At approximately 7:14 p.m., Arnette advised the defendant of his constitutional rights and gave him the opportunity to contact a lawyer, which the defendant declined at that time.[8] Arnette then went over the A-44 form[9] with the defendant and gave the defendant the opportunity to submit to a breath test. The defendant declined to submit to the test, indicating that he had suffered a head injury and wanted to go to the hospital. During booking, the defendant also told Arnette that he had been drinking earlier in the evening at a bar in

---

[7] Arnette testified that he has administered the walk and turn test many times and that none of the people he tested had ever passed.

[8] Subsequently during the booking process, the defendant requested that the officers allow him access to his cellular telephone so that he might retrieve his lawyer's telephone number. The police did not permit him to do so at that time.

[9] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 396 n.3, 786 A.2d 1279 (2001).

Westport and that he had eaten a pound of macaroni earlier in the day.

Upon conclusion of the booking process, the police released the defendant to emergency medical personnel, and he was transported to Norwalk Hospital by ambulance. At the hospital, the defendant was treated by Brian McGovern, an emergency room physician, at approximately 11 p.m. McGovern testified that he treats approximately 4000 patients per year as an emergency room physician. He estimated that upward of 25 percent of emergency room patients are under the influence of alcohol or drugs at the time they are presented to the emergency room and that he has a wealth of experience detecting signs of persons under the influence of alcohol. McGovern testified that when he treated the defendant, the defendant was not intoxicated.

McGovern diagnosed the defendant with head trauma and an acute nasal fracture. McGovern, who was qualified at trial as an expert in the field of emergency medicine, also rendered an expert opinion that the defendant suffered a concussion as a result of the accident. The defendant was prescribed ibuprofen, and McGovern ordered that the defendant be given standard instructions upon discharge relating to head injuries.

In addition to the testimony of Abrams, the Westport police officers and McGovern, the court heard testimony from Joseph Citron, an expert physician called by the defense, who was qualified in the fields of ophthalmology, general medicine and standardized field sobriety tests. Citron testified with regard to the physiological effects of a concussion and head trauma generally, and how those injuries as well as other factors may affect a person's ability to perform successfully the standardized field sobriety tests. Citron testified that head trauma is the leading cause of nystagmus and that if a person suffered a concussion, it would be

impossible to ascertain from the horizontal gaze nystagmus test whether the presence of nystagmus detected was caused by alcohol or the concussion. Citron further opined that on the basis of his understanding of the defendant's injury, it was more likely than not that the defendant had in fact suffered a concussion.

The defense also presented testimony from Norwalk police Officer Michael Silva, who testified that he responded to the hospital on the night of the incident, made contact with the defendant and observed the defendant's facial injuries. Silva testified that, as a police officer, he is trained to detect drivers impaired by alcohol and that he did not detect signs of impairment during his contact with the defendant. Silva, who testified in an off duty capacity, admitted that the defendant is his friend and a former police officer, and that he responded to the hospital after being called by the defendant's brother, also a Norwalk police officer.

Finally, the defense presented testimony from Martin O'Grady, bar manager at the Black Duck Cafe in Westport, and Scott Sabella, a business associate of the defendant. These witnesses testified that the defendant was at the Black Duck Cafe at approximately 4:30 p.m., until just prior to the accident. Each of these witnesses estimated that the defendant had no more than two drinks at the Black Duck Cafe during that time.

On August 30, 2005, the court rendered judgment finding the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor or drugs. The court's judgment was rendered on the basis of, inter alia, the defendant's failure of the standardized field sobriety tests. The court sentenced the defendant on October 7, 2005.[10] This appeal followed.

---

[10] The court, pursuant to Practice Book § 61-13, ordered the sentence stayed pending this appeal.

The dispositive issue on appeal stems from the court's conclusion that the defendant had not suffered a concussion as a result of the accident.[11] The defendant argues that this improper finding allowed the court to conclude improperly that he failed the standardized field sobriety tests, which was the linchpin factual conclusion made by the court in support of the conviction. Accordingly, the defendant argues that without support for the conclusion that he failed the standardized field sobriety tests, there was insufficient evidence to support his conviction. We agree.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [fact finder] to conclude that a basic fact or an inferred fact is true, the [fact finder] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant

---

[11] In addition to this principal argument, the defendant argues within his sufficiency of the evidence claim that the court improperly (1) used his postarrest silence as consciousness of guilt evidence, (2) admitted the results of the standardized field sobriety tests and (3) did not acquit him on the basis of an equal inference of innocence. Because we conclude that the principal claim is dispositive, we need not address these remaining arguments.

guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 402–403, 902 A.2d 1044 (2006).

"Our review of factual determinations is limited to whether those findings are clearly erroneous. . . . We must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Osoria*, 86 Conn. App. 507, 515, 861 A.2d 1207 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

The defendant was convicted of violating § 14-227a (a), which provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle on a public highway of this state . . . while under the influence of intoxicating liquor or any drug or both . . . ." Thus, the elements of this offense, which the state must prove beyond a reasonable doubt, are (1) that the defendant operated a motor vehicle at the time and place alleged, (2) that the operation occurred on a public highway of this state and (3) that the defendant was under the influence of intoxicating liquor or any drug or both. With respect to the third element, "[d]riving while under the influence of liquor means, under the law of Connecticut, that a driver had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Internal quotation marks omitted.) *State* v. *Windley*, 95 Conn. App. 62, 66, 895 A.2d 270, cert. denied, 278 Conn. 924, 901 A.2d 1222 (2006).

The defendant's principal sufficiency claim, which is predicated on the trial court's conclusion that he did not suffer a concussion, relates only to the third element of the offense, intoxication. In support of its conclusion that the state had proven beyond a reasonable doubt that the defendant was under the influence of intoxicating liquor, the court stated: "There's no question that the most poignant evidence of impairment and the influence of alcohol upon the defendant is his failure of the field sobriety tests. The defense has offered testimony and evidence that a person who suffers a head trauma, who has suffered a concussion, is not a good candidate for the field sobriety tests because the results of the

test may be by virtue of a concussion or a head trauma rather than the influence of alcohol. The court accepts this testimony." The court later concluded: "The defendant . . . has offered an alternative conclusion [to explain his inability to perform the field sobriety tests, which is] that the defendant was suffering from a head trauma at the time of the field sobriety tests. However . . . the alternative explanation must be reasonable, that is, based upon reason and the evidence presented. Here, the court would have to engage in conjecture, speculation and guesswork in order to accept or reach this alternative conclusion. The court's conclusion is that the results of the field sobriety tests are reliable on the issue of impairment due to alcohol, and those tests in conjunction with other evidence adduced at trial support a finding of proof beyond a reasonable doubt that the defendant was operating under the influence of alcohol."

In reaching this conclusion, the court discussed the testimony of McGovern and his assessment of the defendant. The court stated: "The medical record from Norwalk Hospital and the testimony of the treating physician indicated one of the possibilities to be considered at the time he was seen at the hospital was that the defendant suffered a concussion. . . . *The treating physician could not opine to any degree of medical certainty or probability that the defendant suffered a concussion.* He does not recall the defendant, does not recall treating the defendant and testified entirely based upon the notes in the defendant's medical records. The medical records reflect nowhere that a diagnosis of concussion was made on the evening in question. The discharge instructions do not include instructions consistent with the diagnosis of concussion. . . . *While the treating physician testified that the defendant may*

*have had a concussion, his testimony is as to the possibility and not the probability.*[12] Further, the sole basis for this opinion, in view of the fact that he didn't recall the defendant or his treatment, was the reference in the medical records that there may have been a loss of consciousness at the scene of the accident. This information is the self report of the defendant and is wholly inconsistent with the evidence as to the defendant's demeanor and reporting at the scene of the accident. The defendant refused medical treatment at the scene. The defendant denied any injury or impairment to his ability to perform field sobriety tests. The defendant advised no one that he may have lost consciousness. The defendant was able to retrieve his license, registration and insurance information without incident. This last piece of evidence is significant because it demonstrates that one of the common indicators of a concussion, that is, altered mentation and orientation to one's circumstances, was not present at the scene immediately following the accident and prior to the administration of the field sobriety tests." (Emphasis added.)

Upon review of the record, we conclude that the court's finding that the treating physician, McGovern, did not opine with any degree of medical probability that the defendant had suffered a concussion as a result of the accident was clearly erroneous. McGovern rendered an expert opinion, unequivocally, that the defendant had suffered a concussion on the basis of his common practice treating more than 4000 patients per year in the emergency room, his review of the medical records and the nature of the defendant's injuries,

---

[12] During the redirect examination of McGovern, the following was elicited:

"[Defense Counsel]: . . . [D]espite all the questions asked by [the prosecutor] on cross-examination, do you still hold the opinion that [the defendant] had a concussion on January 21, 2004?

"[The Witness]: Yes."

namely, an acute nasal fracture and head trauma caused by a motor vehicle collision. Despite that McGovern had no independent recollection of treating the defendant, that the diagnosis did not appear in the medical records and that it was made, in part, on the basis of the defendant's self reporting, McGovern remained firm in rendering his expert medical opinion that the defendant had suffered a concussion. See footnote 12.

The state argues that the court was not bound by this expert opinion and that the court is privileged to adopt whatever testimony it reasonably believes to be credible. See *State* v. *George J.*, 280 Conn. 551, 583, 910 A.2d 931 (2006), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007); *State* v. *Joly*, 219 Conn. 234, 243, 593 A.2d 96 (1991).[13] Although the court certainly was free to discredit the testimony of this expert, it did not do so. Rather, the court made a factual determination that McGovern *did not opine* with certainty or probability that the defendant had suffered a concussion. It is this determination that is wholly unsupported by McGovern's testimony.

Moreover, in addition to McGovern's expert opinion, the record is replete with evidence that it was reasonably probable that the defendant suffered a concussion as a result of the accident. As the court noted, there was undisputed testimony that the defendant suffered an acute nasal fracture as a result of the accident, that he was bleeding from his nose throughout the arrest and booking process, and that he was treated for a head

---

[13] We note that the Supreme Court in both *George J.* and *Joly*, in addressing whether a witness had been hypnotized, employed the abuse of discretion standard. The relevant question in those cases, however, involved the *admissibility* of the evidence and not an assessment of the *weight* that the fact finder ascribed to the evidence. See also *State* v. *Calabrese*, supra, 279 Conn. 401–402 ("[c]laims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error" [internal quotation marks omitted]).

injury on the evening in question at Norwalk Hospital. The court heard testimony from a second expert physician on the issue of the defendant's concussion. Citron opined that on the basis of his understanding of the defendant's injury, it was more likely than not that the defendant had in fact suffered a concussion, and the court did not specifically discredit this testimony. For these reasons, we conclude that the court's finding that no reasonable probability existed that the defendant suffered a concussion was clearly erroneous.

In determining the impact of this improper conclusion in assessing the reasonableness of the court's view of the evidence supporting its judgment, we agree with the court's acceptance of the expert testimony that evidence of a concussion would affect the reliability of the standardized field sobriety tests.[14] We further agree with the court's finding that *the most poignant evidence* of the defendant's impairment in this case would be his failure of the field sobriety tests to the extent that the failure could be attributed to impairment by alcohol. Even when construing the evidence in the light most favorable to sustaining the judgment, we conclude that no reasonable fact finder could discern beyond a reasonable doubt that the defendant's failure of the field sobriety tests resulted by virtue of his being under the influence of alcohol rather than as a result of a concussion. The only additional evidence of the defendant's impairment on which the court relied was evidence

---

[14] In addition to Citron's medical conclusion that a concussion would render the standardized field sobriety tests unreliable, Citron also testified that the versions of the National Highway Traffic Safety Administration training manual, which were in effect at the time of the accident, specifically advised police officers not to perform the field sobriety tests on a suspect if there is evidence of recent head trauma, although Citron conceded that this advisement did not appear in the most recent manual. Additionally, Paulsson testified that he would not perform standardized field sobriety tests on a suspect who suffered a concussion, and both Arnette and Taylor testified that the test results could be affected by a concussion.

that the defendant accelerated his vehicle prior to the accident, that he had had at least two alcoholic drinks before the accident, that he was argumentative and verbally abusive to the officers and refused to submit to a breath test.[15] Without the ability to draw a conclusion beyond a reasonable doubt from the evidence presented at trial that the defendant failed the standardized field sobriety tests due to the consumption of alcohol, we conclude that there is no reasonable view of the evidence that supports the court's judgment of guilty.

The judgment is reversed and the case is remanded with direction to render judgment of not guilty.

In this opinion the other judges concurred.

---

[15] The state has not argued that absent evidence of the defendant's failure of the standardized field sobriety tests due to impairment by alcohol, the evidence nonetheless was sufficient to support the conviction.