# STATE OF CONNECTICUT *v.* DANIEL MORELLI
## (SC 18047)

Katz, Palmer, Vertefeuille, Zarella and Espinosa, Js.

Argued March 19—officially released August 18, 2009

*Harry Weller,* senior assistant state's attorney, with whom were *Tiffany M. Lockshier,* assistant state's attorney and, on the brief, *David I. Cohen,* state's attorney, for the appellant (state).

*Roy S. Ward,* for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. In this certified appeal,[1] the state appeals from the judgment of the Appellate Court reversing the conviction of the defendant, Daniel Morelli, of operating a motor vehicle while under the influence of intoxicating liquor[2] in violation of General Statutes (Rev. to 2003) § 14-227a.[3] *State* v. *Morelli,* 103 Conn. App. 289, 300–303, 929 A.2d 759 (2007). On appeal to this court, the state claims that the Appellate Court improperly concluded that the state had not proven the defendant's guilt beyond a reasonable doubt. We agree, and, accordingly, we reverse the judgment of the Appel-

[1] We granted the state's petition for certification to appeal from the Appellate Court limited to the following issue: "Did the Appellate Court properly reverse the judgment of the trial court convicting the defendant of operating a motor vehicle while under the influence of intoxicating liquor?" *State* v. *Morelli,* 285 Conn. 901, 938 A.2d 594 (2007).

[2] The defendant also was charged with interfering with an officer in violation of General Statutes § 53a-167a. The defendant was found not guilty of that charge, and the state did not seek permission to appeal that judgment.

[3] General Statutes (Rev. to 2003) § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle . . . (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, 'elevated blood alcohol content' means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight.

late Court and remand the case to that court for consideration of the defendant's remaining claims on appeal.

After a trial to the court, the court found the following facts. Between 4 and 5 p.m. on January 21, 2004, the defendant arrived at the Black Duck Cafe in Westport, where he thereafter consumed at least two alcoholic beverages. The defendant then left the Black Duck Cafe, got into his truck and drove away. At approximately 6:15 p.m., the defendant was involved in a motor vehicle accident with another vehicle on Lyons Plain Road in Westport. The defendant admitted to the police officers who responded to the accident that he had consumed alcohol prior to the accident. The defendant acted belligerently toward the responding police officers, particularly when asked to complete certain field sobriety tests. The defendant failed the three field sobriety tests administered at the scene. The trial court specifically found that he had not sustained any injuries, particularly a concussion, during the accident that would have rendered the results of the field sobriety tests unreliable. Moreover, the defendant refused to take a Breathalyzer test, thereby raising a statutory inference of guilt.[4] Although he did answer questions as to where he had been drinking, the defendant was "unable or unwilling" to answer the police officer's questions about what and how long he had been drinking, which the trial court found evinced an attempt to evade responsibility.

The defendant appealed from his conviction to the Appellate Court, claiming, inter alia,[5] that there was

---

[4] General Statutes § 14-227a (e) provides in relevant part: "In any criminal prosecution for a violation of subsection (a) of this section, evidence that the defendant refused to submit to a blood, breath or urine test requested in accordance with section 14-227b shall be admissible provided the requirements of subsection (b) of said section have been satisfied. . . ."

[5] In the Appellate Court, the defendant also claimed that the trial court improperly: (1) used his postarrest silence as consciousness of guilt evidence; (2) admitted the results of the standardized field sobriety tests; and (3) did not acquit him of operating a motor vehicle while under the influence of intoxicating liquor on the basis of an equal inference of innocence. See

insufficient evidence to support his conviction of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a). Specifically, the defendant claimed that the trial court's finding that he had not suffered from a concussion as a result of the accident was not supported by sufficient evidence. As the Appellate Court summarized: "The defendant argues that this improper finding allowed the [trial] court to conclude improperly that he failed the standardized field sobriety tests, which was the linchpin factual conclusion made by the court in support of the conviction. Accordingly, the defendant argues that without support for the conclusion that he failed the standardized field sobriety tests, there was insufficient evidence to support his conviction." *State* v. *Morelli*, supra, 103 Conn. App. 296. The Appellate Court agreed with the defendant and reversed the judgment of the trial court, concluding that the trial court's finding that the defendant had not suffered a concussion "was clearly erroneous." Id., 302. The Appellate Court further concluded that, "[w]ithout the ability to draw a conclusion beyond a reasonable doubt from the evidence presented at trial that the defendant failed the standardized field sobriety tests due to the consumption of alcohol . . . there is no reasonable view of the evidence that supports the [trial] court's judgment of guilty." Id., 303. This certified appeal followed.

As a preliminary matter, we set forth the applicable standard of review. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we con-

*State* v. *Morelli*, supra, 103 Conn. App. 296 n.11. The Appellate Court did not reach these issues. On appeal to this court, we allowed the defendant to raise the following question as an alternative ground for affirmance of the Appellate Court's judgment, although we do not reach it: "Should the Appellate Court's judgment be affirmed on the alternative ground that the trial court improperly used the defendant's postarrest silence as evidence of consciousness of guilt in violation of his fifth amendment rights?" That issue will be taken up by the Appellate Court on remand.

strue the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Farnum*, 275 Conn. 26, 32–33, 878 A.2d 1095 (2005); see also *State*

v. *Perkins*, 271 Conn. 218, 246–48, 856 A.2d 917 (2004) (using sufficiency standards to determine intoxication in manslaughter case).

"[An] appellate court's first task, in responding to a claim of evidentiary insufficiency, is to apply the traditional scope of review to the evidence. That requires that . . . we view all of the evidence, and the reasonable inferences drawable therefrom, in favor of the [trier's] verdict." *State* v. *Sivri*, 231 Conn. 115, 135, 646 A.2d 169 (1994); see also *State* v. *Morgan*, 274 Conn. 790, 801, 877 A.2d 739 (2005) ("[o]ur review is a fact based inquiry limited to determining whether the inferences drawn by the [trier of fact] are so unreasonable as to be unjustifiable" [internal quotation marks omitted]). We note that "a claim of insufficiency of the evidence must be tested by reviewing no less than, and no more than, the evidence introduced at trial." *State* v. *Smith*, 73 Conn. App. 173, 180, 807 A.2d 500, cert. denied, 262 Conn. 923, 812 A.2d 865 (2002). Moreover, even improperly admitted evidence may be considered in the present analysis since "[c]laims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 401–402, 902 A.2d 1044 (2006). Finally, we are mindful that "[i]t is well settled that, in a certified appeal, the focus of our review is not on the actions of the trial court, but the actions of the Appellate Court. We do not hear the appeal de novo." (Internal quotation marks omitted.) *State* v. *Saucier*, 283 Conn. 207, 221, 926 A.2d 633 (2007).

The state claims that the Appellate Court improperly concluded that it had failed to adduce sufficient evidence at trial to support the defendant's conviction. In support of its claim, the state contends that the Appellate Court incorrectly determined that the trial court's finding that the defendant had not suffered a concussion

was improper. The state thus asserts that the trial court's reliance on the field sobriety tests was appropriate. Accordingly, the state contends that the field sobriety tests, in conjunction with the trial court's additional findings that the defendant had admitted to consuming alcoholic beverages, had accelerated into the intersection where the accident occurred, had acted belligerently toward the responding police officers, and had displayed a consciousness of guilt proved beyond a reasonable doubt that the defendant was guilty of operating a motor vehicle while under the influence of intoxicating liquor. We agree.

The elements of operating a motor vehicle while under the influence of intoxicating liquor, each of which the state must prove beyond a reasonable doubt, are: (1) that the defendant operated a motor vehicle at the place and time alleged; (2) that the operation occurred on a public highway of this state; and (3) that the defendant was under the influence of intoxicating liquor. See General Statutes (Rev. to 2003) § 14-227a (a); *State* v. *Windley*, 95 Conn. App. 62, 66, 895 A.2d 270, cert. denied, 278 Conn. 924, 901 A.2d 1222 (2006).

Because the state contends that the Appellate Court improperly concluded that it failed to adduce sufficient evidence to prove the third element; *State* v. *Morelli*, supra, 103 Conn. App. 302–303; we begin there. "[Operating a motor vehicle] while under the influence of liquor means, under the law of Connecticut, that a driver had become so affected in his mental, physical or nervous processes that he lacked to an appreciable degree the ability to function properly in relation to the operation of his vehicle." (Internal quotation marks omitted.) *State* v. *Windley*, supra, 95 Conn. App. 66. The relevant inquiry thus becomes whether there was sufficient evidence for the trier of fact to find that, as a result of consuming alcohol, the defendant lacked to an appreciable degree the ability to operate his vehicle

properly, thereby fulfilling the state's burden as to the third element of the offense.

The following additional facts are relevant to this discussion. Prior to the accident, the defendant was traveling northbound on Weston Road in Westport at the intersection of Lyons Plain Road. At the same time, Cherise Abrams, the operator of the other vehicle involved in the accident with the defendant, was in her vehicle on the southbound side of Weston Road, waiting behind another vehicle in order to turn left onto Lyons Plain Road. Immediately after the first vehicle turned, Abrams observed the traffic light turn yellow. Believing she had enough time to safely cross through the inter-section before the traffic light turned red, Abrams initi-ated her turn. As she began to make her turn, Abrams noticed the defendant's vehicle accelerate rapidly toward her. While Abrams was turning, the defendant's truck collided with the front of Abrams' vehicle, causing irreparable damage. There were no skid marks left by the defendant's vehicle.

Officer George Taylor of the Westport police depart-ment, the first police officer on the scene, approached the defendant, who was standing outside his truck, and observed that the defendant was bleeding from his nose. He offered the defendant medical attention, but the defendant refused. The officer did not notice any signs of intoxication or smell the odor of alcohol on the defendant's breath.

Travis Arnette, another Westport police officer, then arrived at the scene, and after observing the defendant's nose injury, approached him and asked him if he wanted medical assistance. The defendant again refused medi-cal attention. When an ambulance arrived at the scene, Arnette nevertheless brought the defendant to the para-medics, but the defendant refused medical care for the third time. Arnette observed that the defendant was

swaying and having difficulty standing, and smelled the odor of alcohol on the defendant's breath and body. Arnette asked the defendant whether he had been drinking that night, and the defendant replied: "Yeah, but not enough."

On the basis of his observations, Arnette asked the defendant if he would be willing to submit to field sobriety tests, and the defendant consented. Arnette, following required procedure, asked the defendant if he had any injuries that would impair his ability to perform the tests. The defendant responded that, although he had an obvious facial injury, he had no other injuries that would interfere with his ability to perform the tests. Arnette administered the horizontal gaze nystagmus test,[6] the walk and turn test[7] and the one leg stand test,[8] and concluded that the defendant failed all three. Additionally, the defendant was argumentative and belligerent during the administration of the field sobriety tests. Because the defendant had failed all three field sobriety tests, acted in a belligerent

---

[6] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 770 n.3, 970 A.2d 108 (2009); *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 339 n.8, 757 A.2d 561 (2000).

[7] "The walk and turn test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 771 n.4, 970 A.2d 108 (2009); *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 340 n.10, 757 A.2d 561 (2000).

[8] "The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for [thirty] seconds, while counting aloud from [one] to [thirty]." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 771 n.5, 970 A.2d 108 (2009); *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 340 n.11, 757 A.2d 561 (2000).

manner and appeared intoxicated, Arnette arrested the defendant for operating a motor vehicle while under the influence of intoxicating liquor.

Arnette brought the defendant to the police station for processing, and asked the defendant to submit to a Breathalyzer test, which the defendant refused. The officer attempted to complete the required A-44 form[9] (Breathalyzer refusal form) detailing the circumstances surrounding the defendant's arrest and refusal, however, the defendant chose not to provide all of the information requested on the form.

After his arrest, the defendant requested medical attention for his facial injuries and was transported to Norwalk Hospital for treatment. Brian McGovern, an emergency room physician, treated the defendant. While McGovern made an initial diagnosis of a possible concussion, he ultimately did not diagnose the defendant with a concussion, but, rather, with bilateral nasal bone fractures. The defendant's computerized tomography (CT) scan did not show any cranial abnormalities, nor did the defendant display any other classic concussion symptoms, such as unequal pupil size, vomiting, restlessness, forgetfulness, or any reported loss of consciousness. Additionally, McGovern did not discharge the defendant with instructions consistent with an individual suffering from a concussion. Specifically, McGovern did not warn the defendant to avoid driving or operating dangerous machinery or to have someone remain with him to watch for warning signs of brain injury. Rather, he instructed the defendant to seek follow-up care from a physician specializing in ear, nose

___

[9] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle [while] under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." *Roy* v. *Commissioner of Motor Vehicles*, 67 Conn. App. 394, 396 n.3, 786 A.2d 1279 (2001).

and throat conditions for his nasal fractures, and not a neurologist specializing in head trauma.

At trial, the defendant introduced expert testimony from two physicians in an attempt to demonstrate that he actually had suffered from a concussion as a result of the accident because he wanted to show that his failure to pass the field sobriety tests was a result of that head trauma. The first physician to testify was McGovern, who was qualified as an expert in emergency medicine. McGovern could not testify at trial to any degree of medical certainty that the defendant actually had suffered a concussion.[10] Moreover, he testified completely from his medical records, having no independent recollection of the defendant. The second physician to testify was Joseph Citron, an independent physician qualified at trial as an expert in ophthalmology, general medicine, and the standardized field sobriety tests. Citron had never examined the defendant personally and testified based on a review of the defendant's medical records. Citron testified that a head trauma, such as a concussion, could affect the reliability of the field sobriety tests. He additionally testified that the presence of an acute nasal fracture is not necessarily indicative of a concussion, although it is a head trauma. Citron also admitted, however, that nystagmus, which is tested through the horizontal gaze nystagmus field sobriety test, appears the same despite whether it is caused by intoxication or a concussion.

The trial court, although finding that a concussion may affect the reliability of the field sobriety tests, concluded that the evidence presented through McGovern

[10] On direct examination, McGovern was asked: "*Did you diagnos[e]* [the defendant] with having a concussion?" He responded: "Do I *think* he sustained a concussion? . . . Yes." (Emphasis added.) On cross-examination, McGovern was asked: "[A]s you sit here today, you don't really know if he suffered a concussion or not?" McGovern ultimately responded: "That would be true."

and Citron only raised the specter that the defendant may have suffered a concussion but did no more. The trial court found that McGovern could not give an expert opinion to any degree of medical certainty or probability that the defendant actually had suffered a concussion. The trial court stated: "While [McGovern] testified that the defendant *may* have had a concussion, his testimony is as to the *possibility* and not the *probability*." (Emphasis added.) The trial court reasoned that this lack of certainty, coupled with the defendant's initial refusal of medical treatment at the scene, his failure to advise medical personnel of a loss of consciousness, his denial of any injury that could impair the results of the field sobriety tests at the time he consented to the tests, and his ability to maintain normal thought orientation by providing his license and registration, indicated that the defendant was not under the effects of a concussion. Finally, the trial court found that both physicians testified that an acute nasal fracture is not automatically a head trauma that would alter one's ability to pass a field sobriety test.

The Appellate Court disagreed with the trial court, concluding that "McGovern remained firm in rendering his expert medical opinion that the defendant had suffered a concussion." *State* v. *Morelli*, supra, 103 Conn. App. 301. The Appellate Court reasoned that Citron's testimony that it was more likely than not that the defendant had suffered a concussion, coupled with the defendant's acute nasal fracture, supported McGovern's testimony, and the court thereby concluded that "no reasonable fact finder could discern beyond a reasonable doubt that the defendant's failure of the field sobriety tests resulted by virtue of his being under the influence of alcohol rather than as a result of a concussion." Id., 302.

Viewing the evidence at trial in the light most favorable to sustaining the trial court's verdict, we conclude

that the Appellate Court improperly determined that there was insufficient evidence to prove beyond a reasonable doubt that the defendant was intoxicated at the time of the accident. We conclude that there was sufficient evidence to support the trial court's finding that the defendant did not suffer a concussion and failed the field sobriety tests as a result of intoxication rather than injury. The failure of the field sobriety tests, combined with the defendant's belligerent attitude, his questionable driving practices at the time of the accident, his refusal of the Breathalyzer test, and his evasive answers to questions by the police officers provide sufficient evidence to prove beyond a reasonable doubt that the defendant was guilty of operating a motor vehicle while under the influence of intoxicating liquor. The only question is whether the trial court properly rejected the defendant's claim that a concussion reasonably had led to his failure of the field sobriety tests.

It is a "general rule that a [trier of fact] is free either to accept or reject, in whole or in part, the evidence presented by the defendant's witnesses [particularly where] . . . the state has vigorously contested the force of that testimony by cross-examination. . . . [T]he credibility of the defendant's expert and lay witnesses, and the weight to be given to their testimony regarding the existence of mitigating factors, [moreover] is a matter committed to the sound judgment and common sense of the trier of fact." (Internal quotation marks omitted.) *State* v. *Ross*, 269 Conn. 213, 319, 849 A.2d 648 (2004). "In a case in which the evidence is conflicting, it is the quintessential . . . function [of the fact finder] to reject or accept certain evidence, and to believe or disbelieve any expert testimony. . . . [T]he trial court is not required to accept uncontradicted expert testimony. The court might reject it entirely as not worthy of belief or find that the opinion was based on subordinate facts that were not proven." (Citation omitted; internal quotation marks omitted.) *State*

v. *Blades*, 225 Conn. 609, 629, 626 A.2d 273 (1993); see also *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 831, 955 A.2d 15 (2008) ("[n]umerous decisions in this court have upheld decisions in which the trier of fact has opted to reject the unrebutted testimony of an expert witness under appropriate circumstances"). "As long as evidence existed from which the [trier of fact] reasonably could have found the facts and drawn the inferences leading to its guilty verdict, it is our obligation to defer to those findings and inferences in passing on this sufficiency challenge." (Internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 501, 698 A.2d 898 (1997).

In the present case, it is clear that the trial court acted within its discretion as the trier of fact when it found that the defendant had not suffered a concussion, despite accepting testimony from McGovern and Citron that a concussion could alter the outcome of field sobriety tests. That finding was sufficiently supported by the evidence in the record, and thus we defer to the trial court's reasonable findings of fact relating to the expert testimony and whether the defendant suffered a concussion.

First, the trial court was free to weigh the credibility and reliability of the two experts. It did just that when it determined that McGovern did not unequivocally testify with any degree of medical certainty that he had diagnosed the defendant with a concussion. Second, the trial court found that the defendant had refused medical attention at the scene. This finding was supported by the record, given that the defendant refused medical attention at the scene of the accident three times. Moreover, the trial court found that the defendant had been able to speak coherently with the police officers, retrieve his driving and insurance information, and remain oriented as to the situation, which are factors indicating normal thought processes unaffected by a concussion.

Third, the trial court found that the medical treatment received by the defendant had not been indicative of a concussion. This determination is also supported by the record. The defendant's CT scan did not show any abnormal brain swelling, which is a factor considered in diagnosing a concussion. The defendant was not released from the hospital with follow-up instructions consistent with a person suffering from a concussion, thus further demonstrating that he had not been diagnosed with a concussion. Additionally, the defendant was instructed to be examined by an ear, nose and throat physician, not a neurologist, as would be expected for a person sustaining a serious head injury.

The trial court's determination that it "would have to engage in conjecture, speculation, and guesswork in order to accept" the defendant's argument that he suffered a concussion was supported by sufficient evidence in the record. Accordingly, the trial court was free to uphold the validity of the failed field sobriety tests and use the results of those tests to conclude that the defendant had been intoxicated and had not suffered a concussion. See, e.g., *State* v. *Howell*, 98 Conn. App. 369, 377, 908 A.2d 1145 (2006) (failure of field sobriety tests, along with refusal to take Breathalyzer test and slurred speech, sufficient to prove intoxication); *State* v. *Gordon*, 84 Conn. App. 519, 528, 854 A.2d 74 (failure of two field sobriety tests, along with glassy eyes, slurred speech, and refusal to take Breathalyzer test, sufficient evidence for proving intoxication), cert. denied, 271 Conn. 941, 861 A.2d 516 (2004).[11]

---

[11] We note that there was additional evidence in the record to support the trial court's determination that the defendant had been intoxicated at the time of the accident. First, Officer Arnette testified at trial that the defendant had admitted to consuming an alcoholic beverage prior to the accident and that he had smelled the odor of alcohol on the defendant's breath. Martin J. O'Grady, the bar manager of the Black Duck Cafe, where the defendant had stopped on the day of the accident, also testified that the defendant had consumed two alcoholic beverages.

Additionally, Arnette testified that the defendant had a combative attitude during the field sobriety tests. Belligerent and combative conduct may be

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's remaining claims on appeal.

In this opinion the other justices concurred.

indicative of intoxication. See, e.g., *State* v. *Popeleski*, 291 Conn. 769, 771, 970 A.2d 108 (2009) ("verbally combative" behavior is factor considered by police before conducting field sobriety tests). Moreover, Abrams, the operator of the other vehicle involved in the accident, testified at trial that the defendant had accelerated through a yellow light, despite the presence of a vehicle in the intersection, and that the defendant had been traveling so fast that he caused irreparable damage when he crashed into her vehicle. Significantly, there were no skid marks at the scene to indicate that the defendant had tried to avoid Abrams' vehicle or had applied his brakes. Poor driving and a lack of skid marks after an accident are factors that may be considered when determining intoxication. Cf. *State* v. *Milotte*, 95 Conn. App. 616, 617, 897 A.2d 683 (2006) (when driver was "not operating the vehicle in an erratic or dangerous manner" and displayed no indication of criminal activity, police officer lacked authority to conduct investigatory stop, thereby rendering failed field sobriety test inadmissible), appeal dismissed, 281 Conn. 612, 917 A.2d 25 (2007); see *State* v. *McCarthy*, 63 Conn. App. 433, 435–36, 775 A.2d 1013 (lack of skid marks after accident led police officer to conduct field sobriety tests on operator of motor vehicle), cert. denied, 258 Conn. 904, 782 A.2d 139 (2001); *State* v. *Comollo*, 21 Conn. App. 210, 213–14, 572 A.2d 1037 (same), cert. denied, 215 Conn. 811, 576 A.2d 542 (1990); *State* v. *Kwaak*, 21 Conn. App. 138, 147, 572 A.2d 1015 ("no evidence of evasive action of the defendant," coupled with high rate of speed prior to accident, indicative of intoxication), cert. denied, 215 Conn. 811, 576 A.2d 540 (1990).

It is also significant that the defendant had refused to take a Breathalyzer test. The trial court, pursuant to § 14-227a (e), drew an inference of guilt from this refusal. See footnote 4 of this opinion. Such an inference is statutorily valid and a factor to be considered in tandem with other evidence when deciding the issue of intoxication. See, e.g., *State* v. *Hall*, 110 Conn. App. 41, 56–57, 954 A.2d 213 (2008) (refusal of Breathalyzer test and failure of field sobriety tests amongst other factors sufficient to prove intoxication); *State* v. *Gordon*, supra, 84 Conn. App. 528 (same). Finally, Arnette testified that the defendant had provided selective answers to the questions on the Breathalyzer refusal form. Through these two evasive actions, the trial court reasonably could have concluded that the defendant was conscious of his guilt of operating a motor vehicle while under the influence of intoxicating liquor and that he was attempting to avoid detection. See, e.g., *State* v. *Moody*, 214 Conn. 616, 626, 573 A.2d 716 (1990) ("misstatements of an accused, which a [trier of fact] could reasonably conclude were made in an attempt to avoid detection of a crime or responsibility for a crime or were influenced by the commission of the criminal act, are admissible as evidence reflecting a consciousness of guilt" [internal quotation marks omitted]); *State* v. *Riser*, 70 Conn. App. 543, 547–48, 800 A.2d 564 (2002) ("[a] trial court may admit [e]vidence that an accused has taken some kind of evasive action to avoid detection [of] a crime").