******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY VILLAR
(AC 41503)

Alvord, Devlin and Norcott, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of unlawful discharge of a firearm, carrying a pistol without a permit, risk of injury to a child and reckless endangerment in the first degree, the defendant appealed to this court. The defendant's conviction stemmed from an incident in which he fired a shot from a pistol into B's home after having purchased marijuana from B and fighting with him outside of the home. B's girlfriend and her five year old daughter were in the home at the time of the shooting. At trial, the state called B to testify regarding his account of the incident, including that the defendant had pulled a pistol from his waistband and fired a shot into a first floor window of his home. The defendant's friend M, who was with the defendant when he purchased the marijuana from B and witnessed the incident, also provided testimony for the state, the majority of which corroborated B's account of the incident. In addition, M testified that the defendant handed him the pistol as they fled the scene together following the shooting. The police recovered the pistol from M when they subsequently apprehended him and the defendant. The state also presented testimony from forensic examiners who testified that a bullet and shell casing found at B's home was fired by the pistol that was recovered from M and that a buccal swab of the defendant's DNA linked the defendant to that pistol. *Held* that the defendant could not prevail on his claim that there was insufficient evidence for the jury to find him guilty because the state presented insufficient evidence to prove that he was the shooter: on the basis of compelling circumstantial evidence elicited from B, M's eyewitness testimony and the DNA evidence linking the defendant to the pistol that was used to fire the bullet into B's home, the jury reasonably could have concluded that the defendant was the individual who committed the shooting, and although the defendant challenged the competency of M as a witness and noted the self-serving interest of both M and B in testifying on the state's behalf, those contentions were based on credibility considerations that were the exclusive province of the jury, which could have discounted M's and B's testimonies if it had found those witnesses to be unreliable.

Argued October 16—officially released December 17, 2019

*Procedural History*

Substitute information charging the defendant with the crimes of unlawful discharge of a firearm, carrying a pistol without a permit and risk of injury to a child, and with two counts of the crime of reckless endangerment in the first degree, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before *Harmon, J.*; verdict and judgment of guilty of unlawful discharge of a firearm, carrying a pistol without a permit, risk of injury to a child and reckless endangerment in the first degree, from which the defendant appealed to this court. *Affirmed.*

*Justine F. Miller*, assigned counsel, for the appellant (defendant).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *David A. Gulick*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Jeffrey Villar, appeals from the judgment of conviction, rendered after a jury trial, of unlawful discharge of a firearm in violation of General Statutes § 53-203, carrying a pistol without a permit in violation of General Statutes § 29-35 (a), reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a), and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). He claims that there was insufficient evidence for the jury to have found him guilty of those crimes because (1) the state did not present sufficient evidence to prove that he fired the gunshot at issue and the complainant had an interest in seeing the defendant convicted, and (2) the only witness who testified to the defendant's firing the shot was a codefendant who had an interest in seeing the defendant convicted. We conclude that there was sufficient evidence for the jury to reasonably find the defendant guilty of the charged crimes and, therefore, affirm the trial court's judgment.

The following facts reasonably could have been found by the jury and are relevant to the resolution of this appeal. On September 7, 2015, Waterbury police officers responded to a report of shots being fired on a residential street in Waterbury. They were advised that three males were seen leaving the area where the shots were fired. On their way to the scene, the officers had driven past three males but did not approach them. When the officers arrived at the scene, they questioned the complainant, Nathan Burk, who told them that three males—two Hispanic males and one white male—had been at his home, and that he had gotten into a fight with them. Burk told the officers that one of the individuals drew a gun and fired into his home. The officers observed a shell casing in Burk's yard and a small hole in the screen of Burk's window.

Subsequently, two officers went in search of the three males they had passed earlier, who matched Burk's description, and eventually apprehended them. The three males would be later identified as the defendant, Brandon Medina, and Tommy.[1] After the officers apprehended him, Medina disclosed that he had a weapon, and the officers found a firearm in his possession. Burk subsequently identified the defendant as the individual with whom he had fought and who had fired a gun into his home.

At trial, Burk testified to the following facts. On the date of the incident, he lived in Waterbury with his girlfriend and her five year old daughter, C.[2] At approximately noon, the defendant contacted Burk to purchase marijuana. Burk previously had sold marijuana to the defendant approximately ten times. The defendant arrived at Burk's home with two friends, Medina and Tommy, and all three appeared to be intoxicated. Once

the defendant completed the marijuana transaction, he asked Burk for a ride to buy a new tire because the car the defendant was driving had a flat tire. Burk agreed to give the defendant a ride, but they were ultimately unsuccessful in purchasing the tire. They then returned to Burk's home; while outside, the defendant approached Burk, showed him a silver pistol, and asked him if he wanted to buy it, and Burk declined.

Shortly thereafter, the defendant and Tommy got into an argument, which escalated to the two shoving each other. This altercation worried Burk, who then called his sister to see if he could bring C over to her home; when she agreed, he got C and left the premises. When he and C returned to the home a few hours later, the defendant and his friends were not present. At around 7 p.m., however, Burk noticed that they had returned outside and were even more intoxicated than before. He went outside and told the defendant that he had called a friend, Moses,[3] to assist with the flat tire. Moses arrived, but he left soon thereafter to retrieve a tire. The defendant and his friends then knocked on Burk's door and told him that Moses had left with their money. After a telephone call with Moses, Burk assured the defendant that Moses was returning.

Later that evening, Burk saw that the defendant and his friends remained outside with the unrepaired vehicle. He noticed that Tommy was in a neighbor's yard and asked the defendant if Tommy was urinating. Burk then noticed a shift in the defendant's demeanor. Specifically, the defendant became angry, approached Burk, and stopped about a foot from his face. Feeling threatened, Burk told the defendant that he was going back inside his home. As he walked toward his home, the defendant followed him and attempted to punch him. Burk responded by punching the defendant, causing him to stumble backward.

The defendant then reached into his waistband. Believing that he was about to be shot, Burk ran into his home, locked the door, and braced it with his body. Outside Burk's home, the defendant began yelling and banging on the door. This prompted Burk to call 911 on his cell phone. The defendant then stepped off Burk's porch, pulled a pistol from his waistband, and fired a shot into Burk's first floor living room window. Burk heard the shot while he was on the phone with the 911 operator. Burk's girlfriend, who was home at the time of the shooting, saw the defendant and his friends running away from the scene.

In addition to eliciting compelling circumstantial evidence from Burk, the state also called Medina as an eyewitness. Medina testified that on the drive over to Burk's home, he observed the defendant remove a silver pistol from his waistband and place it in the glove compartment of the car the defendant was driving. A majority of his testimony corroborated Burk's account of the

incident, particularly his description of the defendant pulling a gun from his waistband and firing a shot at Burk's home. Additionally, Medina testified that once the shot was fired, he, Tommy, and the defendant ran down the street, and the defendant handed him the pistol.

In addition to the testimony of Burk and Medina, the state also presented DNA evidence linking the defendant to the pistol that was used to fire the bullet into Burk's home. A forensic examiner in the firearms unit of the Division of Scientific Services within the Department of Emergency Services and Public Protection testified that the bullet and casing found at Burk's home was fired by the pistol that was recovered from Medina. Further, a forensic examiner from the Connecticut Scientific Forensic Laboratory testified that a buccal swab of the defendant's DNA was compared to three swabs from the trigger, slide, and magazine of the pistol. With respect to the results of the DNA profile on the slide, the expert testified that it was 100 billion times more likely that the DNA profile originated from the defendant than from an unknown individual.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 151–52, 976 A.2d 678 (2009). This court "will not reweigh the evidence or resolve questions of credibility in determining whether the evidence was sufficient." (Internal quotation marks omitted.) *State* v. *Soto*, 175 Conn. App. 739, 747, 168 A.3d 605, cert. denied, 327 Conn. 970, 173 A.3d 953 (2017). "Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Morelli*, supra, 152.

The defendant does not contest that the evidence was sufficient to prove that a shooting occurred. Rather, he argues that there was insufficient evidence to prove his identity as the shooter. Among other things, the defendant challenges the competency of Medina as a witness[4] and notes the self-serving interest in Medina's and Burk's testimonies.[5] These challenges, however, are based on credibility considerations that rest with the jury. *State* v. *Kendrick*, 314 Conn. 212, 223, 100 A.3d 821 (2014) ("[i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make deter-

minations of credibility, crediting some, all or none of any given witness' testimony" [internal quotation marks omitted]). If the jurors had found the witnesses' testimony unreliable, they could have discounted it. At oral argument before this court, the defendant argued that if the jury had indeed discounted the testimony of both witnesses, finding them not credible, the only remaining evidence on which the jury could have reached a guilty verdict would have been circumstantial, which the defendant contends was not strong enough to "absolutely identify [the defendant] as the shooter." Circumstantial evidence, however, carries the same probative value as direct evidence. *State* v. *Berthiaume*, 171 Conn. App. 436, 444, 157 A.3d 681, cert. denied, 325 Conn. 926, 169 A.3d 231, cert. denied,    U.S.    , 138 S. Ct. 403, 199 L. Ed. 2d 296 (2017). Further, as our Supreme Court has often noted, "proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal." (Internal quotation marks omitted.) *State* v. *Morelli*, supra, 293 Conn. 152.

The state did not need to produce evidence to prove the defendant's guilt beyond *any* possible doubt. Viewing the cumulative effect of the evidence in this case in the light most favorable to sustaining the verdict, the jury reasonably could have concluded, on the basis of the eyewitness and circumstantial evidence, that the defendant was the individual who committed the shooting.

The judgment is affirmed.

[1] Due to his status as a minor, Tommy was referred to only by his first name during the trial court proceedings.

[2] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[3] Moses was referred to only by his first name during the trial court proceedings.

[4] The defendant notes that Medina "had been drinking heavily throughout the day of the incident. At trial, Medina testified that he did not remember a number of thing[s] that occurred that day because he 'was intoxicated and didn't have a clear mind.' "

[5] The defendant asserts that, as a codefendant, Medina had a self-interest in testifying against the defendant to avoid prosecution himself for the shooting or to receive consideration for his own charge of possession of a firearm. He also suggests that Burk may have been motivated to accuse the defendant due to fear of possible assault charges for hitting the defendant.