******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* TODD R. ROMANKO
(SC 19112)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Argued March 20—officially released August 19, 2014*

*Jeanne M. Zulick*, assigned counsel, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Robert Diaz*, assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. In this certified appeal,[1] we consider whether the Appellate Court properly concluded that the trial court did not abuse its discretion by precluding certain demonstrative evidence proffered by the defendant, Todd R. Romanko. The defendant appeals from the judgment of the Appellate Court affirming the trial court's judgment of conviction, rendered following a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor or drugs or both, in violation of General Statutes § 14-227a (a) (1). The defendant claims that by precluding the proffered demonstrative evidence, by which the defendant sought to display to the jury how his alleged disability prevented him from performing two mobility based field sobriety tests under any conditions, the trial court deprived him of his constitutional right to present a defense. The defendant additionally claims that the state cannot satisfy its burden to prove that the error was harmless beyond a reasonable doubt. Because we conclude that, rather than preventing the defendant from presenting his defense, the court acted within its discretion in disallowing the defendant from utilizing a demonstration that the court properly deemed unreliable to pursue his theory of defense, we affirm the judgment of the Appellate Court.[2]

The jury reasonably could have found the following facts. At 10 p.m., on August 14, 2009, Cheryl Byrne was in the living room of her home in Burlington, when she heard noises outside. She walked into the kitchen to look out the window to the backyard and saw the defendant, whom she did not know, on the deck that wraps around the house. Initially, the defendant did not respond when Byrne repeatedly asked him what he was doing there, but eventually he told her he was looking for "Gerry." Byrne noticed that something was "definitely not right" with the defendant, that his eyes were glossy and he appeared to see with what she termed "tunnel [vision]." She was uncertain whether he was intoxicated or under the influence of drugs. She told him that there was no one named Gerry there, and that he had to leave. The defendant then walked around the deck and entered the house through the front door. When Byrne's German shepherd dog immediately began barking furiously, the defendant backed out of the home and walked to where he had parked his car. Byrne watched him drive away in an older, white Monte Carlo with a red pinstripe. She made note of the license plate number, then called 911 to report the incident, providing the description of the vehicle and the license plate number to the police.

At approximately 10:30 p.m., Officer Stanley Murak of the Farmington Police Department was on patrol in his marked police cruiser when he spotted the defendant's vehicle turning onto Coppermine Road in Farm-

ington. Murak had been traveling in the opposite direction, but he turned around and drove back until he came to an intersection, where the defendant's vehicle was stopped at a stop sign. Although there were three vehicles between the defendant's vehicle and Murak's cruiser, Murak could see that the left tires on the defendant's vehicle were on the double yellow line in the middle of the road. The defendant's vehicle proceeded through the intersection, then swerved quickly to the left, crossing at least one foot over the yellow lines, then swerved back to the right. At that point, Murak turned on his lights and siren and passed the three other vehicles to pull over the defendant. As he pulled behind the defendant's vehicle, the Monte Carlo pulled to the right, its right front tire striking the curb, going over it, then coming back down, whereupon the vehicle came to a stop.

After notifying dispatch of the motor vehicle stop, Murak exited his cruiser, approached the driver's side of the defendant's vehicle and asked the defendant for his license, registration and insurance card. As the defendant looked for his registration and insurance card, Murak observed that the defendant's movements were slow and deliberate. Observing that the defendant's vehicle was emitting steam, Murak asked the defendant if that was normal. When the defendant responded, Murak smelled the odor of alcohol on his breath and noticed that the defendant's speech was slurred. He could see into the passenger compartment of the vehicle, where he observed an empty, twenty-four ounce beer can on the rear floor of the driver's side. He asked the defendant how much alcohol he had consumed that night, and the defendant replied that he had had one twelve ounce beer. Seeing that the defendant's pants were unzipped, Murak asked him why his zipper was down. The defendant responded that he must have forgotten to zip it back up, but then left his pants unzipped.

Suspecting at this point that the defendant was under the influence of alcohol, Murak asked the defendant to step out of the vehicle. The defendant complied, and Murak began to administer three standard field sobriety tests, beginning with the horizontal gaze nystagmus test,[3] which the defendant failed. Murak next proceeded to administer the walk and turn test, also known as the heel to toe test.[4] Before asking the defendant to perform the test, Murak explained it verbally, then demonstrated it. The defendant failed the test. Finally, Murak administered the one leg stand test.[5] The defendant expressed concern about the gravel on the side of the road, whereupon Murak allowed him to select a different location. The defendant failed that test as well.

At that point, Murak placed the defendant under arrest. He handcuffed the defendant, verbally advised him of his *Miranda*[6] rights and searched his person. He

then performed an inventory search of the defendant's vehicle, and discovered, in addition to the twenty-four ounce empty beer can he already had seen, another empty twenty-four ounce beer can, an empty eight ounce beer can, and a full eight ounce can of beer. At the precinct, the defendant was again advised of his *Miranda* rights and he signed a notice of rights form. Murak informed the defendant of Connecticut's implied consent law; General Statutes § 14-227b; and requested that the defendant submit to a breath test on a machine called an Intoxilyzer 5000, which the defendant refused to do. Murak then summoned another officer, Sean Bailey, to witness the defendant's refusal to submit to the breath test. Murak then questioned the defendant using an A-44 form.[7] The defendant again stated that he had consumed one beer that evening, and that when Murak stopped him, he had been coming from Murphy & Scarletti's, a bar in Farmington. The defendant admitted that he took prescription medication, and Murak recovered a bottle of a generic form of Ativan from the defendant's person.

The defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs or both in violation of § 14-227a (a) (1).[8] During the trial, the defendant testified that he was unable to perform the walk and turn and the one leg stand field sobriety tests because of a knee injury that he had sustained during an accident on his dirt bike five years earlier. In connection with that testimony, the defendant sought to perform those tests in front of the jury. After a hearing outside the presence of the jury during which the court heard the defendant's offer of proof, the court precluded the evidence on the basis that it was not possible to replicate in court the conditions on the night of the arrest, and because "[i]t would be inappropriate to have the defendant demonstrate what he thinks occurred on that night." The court added, however, that it would give the defendant "every leeway" to present his theory of the defense by other means.

Following his conviction, the defendant was sentenced to three years incarceration, execution suspended after one year, and three years probation. The defendant appealed from the judgment of conviction to the Appellate Court, which affirmed the judgment on the basis of its conclusion that the trial court correctly determined that the proffered demonstration was unreliable. *State* v. *Romanko*, 139 Conn. App. 670, 675, 56 A.3d 995 (2012). This certified appeal followed.

The defendant claims that in precluding the proffered demonstrative evidence, the trial court violated his constitutional right to present a defense. We disagree. Because the court acted within its discretion in precluding the proposed demonstration on the basis of its finding that the conditions were not substantially similar

and because the court allowed the defendant to prove his theory of defense by other means, we conclude that the court did not abuse its discretion in precluding the demonstrative evidence.

We review a trial court's evidentiary ruling for abuse of discretion. *State* v. *Iban C.*, 275 Conn. 624, 634, 881 A.2d 1005 (2005). In a criminal case, "[w]hen defense evidence is excluded, such exclusion may give rise to a claim of denial of the right to present a defense. . . . A defendant is, however, bound by the rules of evidence in presenting a defense. . . . Although exclusionary rules of evidence should not be applied mechanistically to deprive a defendant of his rights, the constitution does not require that a defendant be permitted to present every piece of evidence he wishes." (Citations omitted; internal quotation marks omitted.) *State* v. *Bova*, 240 Conn. 210, 236, 690 A.2d 1370 (1997). The trial court retains the power to rule on the admissibility of evidence pursuant to traditional evidentiary standards. Id.

We have recognized that "the trial court has broad discretion in determining whether to admit or exclude demonstrative evidence." *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 20, 905 A.2d 55 (2006); see also *Friedler* v. *Hekeler*, 96 Conn. 29, 32, 112 A. 651 (1921) (holding that trial court acted within its discretion in allowing demonstration of extent to which plaintiff in personal injury action could close her eye). The general rule is that demonstrative evidence must be helpful to the fact finder in order to be admissible. C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 11.18, pp. 744–45. The particular type of demonstrative evidence, and the purpose for which it is offered, determine the specific inquiry that a court engages in to determine the admissibility of the proffered evidence. Id., § 11.15.1, p. 736 (explaining that "[b]efore demonstrative evidence is admitted, the purpose of the evidence should be clearly stated," and enumerating different foundational requirements depending on stated purpose of proffer). Where the proffered evidence, as in the present case, is a physical demonstration that is offered for the purpose of recreating the events at issue at trial, "the demonstration must be performed under substantially similar conditions so that the rendition is reasonably fair and accurate." Id., § 11.18, pp. 744–45; see also *State* v. *Holota*, 2 Conn. Cir. Ct. 45, 49, 194 A.2d 69 (1963) (holding that trial court properly precluded defendant's proposed demonstration of his performance of sobriety tests, because "[t]he conditions were not the same; the tests could not be reproduced"); *State* v. *Martin*, 182 Vt. 377, 388, 944 A.2d 867 (2007) (no abuse of discretion to preclude videotaped reenactment of accident where conditions in reenactment were "not substantially similar" to those that existed during actual event).

The trial court in the present case properly grounded its ruling on its determination that the conditions of the defendant's proposed demonstration were not substantially similar to those that existed on the night of the defendant's arrest. The colloquy between the court and the parties reveals that both the court and the parties understood that the purpose of the proposed evidence was to reenact the walk and turn and the one leg stand tests.[9] During the offer of proof, defense counsel explained that the purpose of the proposed demonstration was to "show the jury how the [defendant] performed [those tests] physically." The state objected on the basis that a present demonstration of the defendant's performance of the tests would not be able to show how he performed them on the night of the arrest, more than one year earlier. In response to the court's inquiry as to how the defendant's present performance of the tests could fairly and accurately represent what happened on the night of the arrest, defense counsel responded that the jury could take into account that they were viewing the tests in the present time, and that the performance was similar, but not identical to the way that the defendant performed them on the night of the arrest, and that the purpose was to show that "in a sober condition [the] defendant performs the test[s] the same way." When the court questioned how the jury would be able to compare the two performances, since they were not present on the night of the arrest, defense counsel responded that the jury could compare the defendant's in-court demonstration with the description that Murak had given during his testimony of the defendant's performance of the tests on the night of the arrest. The state reiterated its objection on the basis that the in-court performance of the tests could not accurately represent the defendant's performance "a year ago, at a different location, outdoor[s], [on the] side of the road." The court asked defense counsel if he claimed that the defendant was somehow an expert on the tests. Defense counsel responded no, and added that he believed, because the defendant suffers from a disability, that the jury should be able to view him performing the tests.

We evaluate the court's ruling in light of the proposed purpose of the offer and the court's finding that the conditions in court were not substantially similar to those that existed on the night of the arrest. Our review of the transcripts, as previously noted, reveals that defense counsel repeatedly indicated that the purpose of the offer was to reenact the defendant's performance of the tests. In light of that proposed purpose, the trial court applied the proper standard when it considered whether the conditions in court were substantially similar to those on the night of the arrest. Moreover, in light of the court's finding that the conditions were not substantially similar—a finding that the defendant does not challenge on appeal—it did not abuse its discretion

in precluding the demonstration.[10]

It is also significant that the court did not prevent the defendant from presenting his theory of the defense—that it was his disability rather than his intoxication that caused him to fail the walk and turn and one leg stand tests—by other means. By expressly allowing the defendant "every leeway" to present his defense theory by means other than the proposed demonstration, the court made clear that it was excluding only the demonstrative evidence of the defense, and not the defense itself. The defendant was free to testify regarding his injury and the effect that the injury had on his ability to perform the tests, and he did. The defendant testified that five years prior to the arrest, he had injured his knee during a dirt bike accident. He further stated that he had tried to explain to Murak that his injury would prevent him from performing the tests properly, but Murak would not listen to him. These two statements by the defendant represent the sum total of evidence he presented in support of his theory. He also was free to present other evidence regarding the effect that his injury had on his ability to perform the tests. He could have presented the testimony of a treating physician, produced documentary evidence, and questioned his father and his friend, both of whom testified on his behalf, regarding the injury.[11] He did not. Nor did he mention in closing argument to the jury his claim that it was his disability rather than his intoxication that prevented him from passing the two mobility based field sobriety tests. The mere fact that the trial court prevented the defendant, on the basis of the court's sound application of the rules of evidence, from relying on an unreliable demonstration to prove his claim does not support the defendant's claim that the court's ruling violated his constitutional right to present a defense. The defendant had many other opportunities to present reliable, admissible evidence to prove his claim, and he chose not to. The court's ruling did not infringe on his constitutional right to present a defense.

The judgment of the Appellate Court is affirmed.

In this opinion ROGERS, C. J., and ZARELLA, EVELEIGH, McDONALD and ROBINSON, Js., concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Although Justice Palmer was not present when the case was argued before the court, he has read the record and briefs, and listened to a recording of the oral argument prior to participating in this decision.

[1] The defendant appealed from the judgment of conviction to the Appellate Court, which affirmed the judgment. *State* v. *Romanko*, 139 Conn. App. 670, 675, 56 A.3d 995 (2012). We subsequently granted the defendant's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly determine that the trial court did not violate the defendant's constitutional right to present a defense when it precluded the defendant from introducing certain demonstrative evidence?" *State* v. *Romanko*, 308 Conn. 908, 61 A.3d 530 (2013).

[2] In light of our conclusion that the defendant's constitutional right to present a defense was not violated, it is unnecessary for us to address the defendant's claim that the alleged error was not harmless beyond a

reasonable doubt.

[3] "The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 156 n.6, 976 A.2d 678 (2009).

[4] "The walk and turn test requires the subject to walk heel to toe along a straight line for nine paces, pivot, and then walk back heel to toe along the line for another nine paces. The subject is required to count each pace aloud from one to nine." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 156 n.7, 976 A.2d 678 (2009).

[5] "The one leg stand test requires the subject to stand on one leg with the other leg extended in the air for [thirty] seconds, while counting aloud from [one] to [thirty]." (Internal quotation marks omitted.) *State* v. *Morelli*, 293 Conn. 147, 156 n.8, 976 A.2d 678 (2009).

[6] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7] "The A-44 form is used by the police to report an arrest related to operating a motor vehicle [while] under the influence and the results of any sobriety tests administered or the refusal to submit to such tests." (Internal quotation marks omitted.) *State* v. *Brown*, 309 Conn. 469, 474 n.7, 72 A.3d 48 (2013).

[8] In the second part of the information, the defendant was charged with having two prior convictions for driving while under the influence, for which the state sought an enhanced penalty. See General Statutes § 14-227a. The defendant pleaded guilty to this charge.

[9] The defendant now claims that the trial court misunderstood the purpose of his offer. He claims that he did not seek to reenact the tests, but to demonstrate to the jury that he could not have performed the mobility based field sobriety tests under any circumstances, due to his disability. Our review of the record, however, persuades us that the trial court correctly understood the defendant's explained purpose of the offer. As we explain herein, the statements that defense counsel made to the court during the offer of proof are consistent with the trial court's understanding that the defendant sought to reenact the performance of the tests.

Moreover, as the concurring opinion observes, the final statement the court made on this issue was that it was "not going to allow that kind of demonstrative evidence, basically, because we cannot recreate the scene. It would be inappropriate to have the defendant demonstrate what he thinks occurred on that night." The defendant did not make any statement suggesting that he disagreed with the court's interpretation of his proffer, nor did he later file a motion for reconsideration or articulation that would have suggested he disagreed with the court's understanding of the basis for his proffer.

[10] The defendant also suggests that the court's ruling violated his right to testify on his own behalf. He claims that the demonstration would have permitted him to "present his own version of [the] events . . . ." The right to testify, the defendant explains, is part of his right to present his defense. He adds that precluding the demonstration because the court deemed it to be unreliable is akin to precluding a defendant from testifying on the basis of a determination that the defendant may not be truthful.

Although we agree with the defendant that the constitutional right to present a defense includes the right to testify on one's own behalf, we reiterate that the right to present a defense does not free the defendant from the bounds of the rules of evidence. *State* v. *Bova*, supra, 240 Conn. 236. As we explain in this opinion, the court adhered to the rules of evidence in precluding the demonstration. Its determination that the proffered demonstration would be unreliable, moreover, was not tied at all to a concern that the defendant may feign injury, but was premised solely on the lack of any substantial similarity between the courtroom conditions and the conditions at the scene on the night of the defendant's arrest. The defendant's argument, therefore, that the court's ruling was comparable to barring a defendant's testimony on the basis of suspected untruthfulness, is unpersuasive.

[11] The defendant claims that because the demonstrative evidence would have been superior to any verbal testimony or documentary evidence he could have offered to prove that he failed the mobility based field sobriety tests due to his disability, the fact that the court allowed him to prove his

defense by other means did not render the court's ruling constitutionally valid. Even taking the defendant's claim that the demonstration was somehow superior to other methods of proof, the defendant's argument fails, because it ignores the fact that the evidence was inadmissible because the court found that the conditions were not substantially similar. Therefore, the demonstration would not have been reliable.